**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **JAMES TRIPP,**<br><br>      **Plaintiff,**<br><br>      **v.**<br><br>**ASCENTAGE PHARMA GROUP INTERNATIONAL, ASCENTAGE PHARMA GROUP, INC., and DAJUN YANG,**<br><br>      **Defendants.** | Civ. No. 22-5934 (KM) (JBC)<br><br>OPINION |

<u>**KEVIN MCNULTY, U.S.D.J.:**</u>

This matter comes before the Court on the motion (DE 4)[1] of defendants Ascentage Pharma Group Inc. ("Ascentage") and Dajun Yang to dismiss the complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) or, alternatively, to transfer the case to the United States District Court for the District of Maryland. For the reasons set forth below, the motion of Ascentage and Yang is **GRANTED**.

**I.    BACKGROUND**

James Tripp is a resident of New Jersey and a former employee of Ascentage. (Compl. ¶ 5.) Ascentage is "a biopharmaceutical company that

---

[1]      Certain citations to the record are abbreviated as follows:

DE = docket entry

Compl. = Complaint (DE 1)

Def. Br. = Ascentage and Dajun Yang's Motion to Dismiss (DE 4)

Yang Decl. = Declaration of Dajun Yang (DE 4-2 Ex. 1)

Cheng Decl. = Declaration of Lily Cheng (DE 4-2 Ex. 2)

Pl. Br. = James Tripp's Opposition to the Motion to Dismiss (DE 5)

Tripp Decl. = Declaration of James Tripp (DE 5-1)

develops, among other things, therapies for cancers, chronic hepatitis B, and age-related diseases." (Cheng Decl. ¶ 4.) Ascentage is incorporated in Delaware and has its principal place of business in Maryland. (Compl. ¶ 6; Cheng Decl. ¶ 5.) Dajun Yang is the founder, president, and chief executive officer of Ascentage. (Yang Decl. ¶ 2.) Yang primarily resides in China and has his principal United States residence in Maryland. (Yang Decl. ¶ 3–4; Def. Br. p. 2.) Yang has never resided in, held a driver's license from, owned property in, or otherwise lived in New Jersey. (Yang Decl. ¶ 5.)

In or around June 2019, Ascentage used a global recruiting firm to recruit Tripp for employment. (Tripp Decl. ¶ 1.) At the time, Tripp was living in New Jersey. (*Id.*) The recruiting firm organized an in-person meeting between Tripp and Yang in Chicago, Illinois. (*Id.* at ¶ 2.) Following the conference, Tripp, now back in New Jersey, continued to negotiate the terms and conditions of his employment with Ascentage via telephone. (*Id.* at ¶ 3.)

In August 2019, Tripp began working for Ascentage in the position of "SVP, Portfolio Management and US Operations." (Compl. ¶ 13.) Throughout his employment with Ascentage, Tripp worked full-time at his home in New Jersey. (Tripp Decl. ¶ 4.) Tripp paid New Jersey income, disability, and unemployment tax on his wages from Ascentage. (*Id.* at ¶ 5.) Ascentage also "utilized [Tripp's] physical location in New Jersey so that [he] could contact potential investors located in the area, particularly New York City, which is approximately 20 minutes from [his] home." (*Id.* at ¶ 6.) Additionally, Tripp occasionally "met in-person with other Ascentage employees in New Jersey, including at an Ascentage office that was located at 100 Connell Drive, Berkeley Heights, New Jersey. That office was closed in or around March 2021." (*Id.* at ¶ 7; Pl. Br. p. 3.) At least 14 other Ascentage employees work remotely from their homes in New Jersey. (Compl. ¶ 9; Cheng Decl. ¶ 10; *see also* Pl. Br. p. 4 n.2.)

In order to facilitate Tripp's remote work, Ascentage provided him with a company-issued laptop, cell phone, and printer/scanner. (Tripp Decl. ¶ 8.)

While working remotely in New Jersey, Tripp sent or received more than 50 work emails per day, made or received approximately 5 work phone calls per day, and participated in Microsoft Teams video conferences about 3 or 4 times per day. (*Id.* at ¶ 10.) Tripp also stored "highly confidential company information and documents" at his home office. (*Id.* at ¶ 9.)

Yang supervised Tripp's work and made decisions regarding his compensation and annual bonuses. (Compl. ¶ 14; Tripp Decl. ¶ 15.) During his employment with Ascentage, Tripp never received a warning that his employment with the company could be in jeopardy, and, in January 2022, Tripp received 99% of his 2021 targeted bonus. (Compl. ¶¶ 16–17.)

On February 21, 2022, Tripp was rushed to the emergency room with "extreme pain in his abdomen due to a bowel obstruction." (Compl. ¶ 18.) Tripp was admitted to the hospital and stayed overnight. (*Id.*) Tripp advised Ascentage of his hospitalization the next day and was released from the hospital on February 25, 2022. (*Id.* at ¶¶ 19, 21.) Also on February 25, Tripp contacted Jason Gilmore, Ascentage's director of human resources, and informed him that he would need to take medical leave. (*Id.* at ¶ 26.) Gilmore advised Tripp to apply for short-term disability benefits in New Jersey and also under Ascentage's private disability plan, New York Life. Both of those applications were approved. (Compl. ¶ 27; Tripp Decl. ¶ 11.) Gilmore advised Tripp that he would update Yang on Tripp's medical condition. (Compl. ¶ 28.) At the direction of his gastroenterologist, Tripp took a short-term disability leave from work so that more tests could be conducted and he could recover. (*Id.* at ¶ 24.) On March 23, 2022, Tripp advised Gilmore that he hoped to return from leave on April 18, 2022. (*Id.* at ¶ 31.)

On April 18, 2022, Tripp met with Gilmore and Jeff Kmetz, who is Ascentage's chief business officer. (Compl. ¶ 34; Tripp Decl. ¶ 13.) They met via video conference, with Tripp in New Jersey, Kmetz in California, and Gilmore in Maryland. (Tripp Decl. ¶ 13.) During the meeting, Kmetz stated to Tripp, "we know today is your first day back, but we are letting you go." (Compl. ¶ 36.)

3

Kmetz did not provide any reason for the termination and advised Tripp that the termination decision was made by Yang. (Compl. ¶ 37; Tripp Decl. ¶ 13.) Gilmore emailed Tripp a proposed separation and release agreement offering two weeks of severance and one month of COBRA in return for Tripp's agreeing to release all legal claims against Ascentage. Tripp did not sign the agreement. (Compl. ¶ 39; Tripp Decl. ¶ 14.) After his termination, Tripp applied for and received unemployment benefits from New Jersey. (Tripp Decl. ¶ 16.)

On October 7, 2022, Tripp filed this action. The complaint asserts six claims: disability discrimination under the New Jersey Law Against Discrimination ("NJLAD") (Counts 1 and 2); unlawful retaliation under NJLAD (Count 3); unlawful interference under the Family and Medical Leave Act ("FMLA") (Count 4); failure to restore under FMLA (Count 5); and unlawful retaliation under FMLA (Count 6). (DE 1.) On December 6, 2022, defendants Ascentage and Yang filed a motion to dismiss.[2] (DE 4.) Tripp filed an opposition, to which defendants replied. (DE 5, 6.)

## II.    RULE 12(B)(2) STANDARD

A plaintiff bears the burden of establishing sufficient facts to show that personal jurisdiction exists. *Marten v. Godwin*, 499 F.3d 290, 295–96 (3d Cir. 2001). While a court must accept the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff, *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002), it must still examine any evidence presented with regard to disputed factual allegations, *see, e.g.*, *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 155–56 (3d Cir. 2010) (examining the evidence supporting the plaintiff's allegations); *Patterson v. FBI*, 893 F.2d 595, 603–04 (3d Cir. 1990) ("Rule 12(b)(2) motion, such as the motion made by the defendants here, is inherently a matter which requires resolution

---

[2]    According to defendants' brief in support of the motion to dismiss, defendant Ascentage Pharma Group International has not been served in this action and is therefore not involved in the motion to dismiss. (Def. Br. p. 1 n.1.) I note that, as of the date of this opinion, no affidavit of service for Ascentage Pharma Group International appears on the docket.

of factual issues outside the pleadings, *i.e.* whether in personam jurisdiction actually lies. Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence.") (quoting *Time Share Vacation Club v. Atl Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984)).

Initially, the plaintiff "need only establish a prima facie case of personal jurisdiction." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). Nevertheless, a plaintiff may not "rely on the bare pleadings alone" in order to withstand a motion to dismiss for lack of personal jurisdiction. "Once the motion is made, Plaintiff must respond with actual proofs, not mere allegations." *Patterson*, 893 F.2d at 604 (internal citations omitted); *Time Share Vacation Club*, 735 F.2d at 66 n.9.

To assess whether it has personal jurisdiction over a defendant, a district court will undertake a two-step inquiry. *IMO Indus., Inc. v. Kiekert, AG*, 155 F.3d 254, 259 (3d Cir. 1998). First, the court is required to use the relevant state's long-arm statute to see whether it permits the exercise of personal jurisdiction. *Id.*; Fed. R. Civ. P. 4(k). "Second, the court must apply the principles of due process" under the federal Constitution. *WorldScape, Inc. v. Sails Capital Mgmt.*, No. 10-cv-4207, 2011 WL 3444218, *3 (D.N.J. Aug. 5, 2011) (citing *IMO Indus.*, 155 F.3d at 259).

In New Jersey, the first step collapses into the second because "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Miller Yacht Sales*, 384 F.3d at 96 (citing N.J. Ct. R. 4:4-4(c)). Accordingly, personal jurisdiction over a non-resident defendant is proper in this Court if the defendant has "certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Provident Nat'l Bank v. Cat Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

A district court may hear a case involving a non-resident defendant if it possesses either of two kinds of personal jurisdiction: general or specific. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–15 & n.9 (1984).

A court may exercise general jurisdiction when a defendant has "continuous and systematic contacts" with the forum state. *Id.* at 415. The defendant's "contacts need not relate to the subject matter of the litigation," *Ameripay, LLC v. Ameripay Payroll, Ltd.*, 334 F.Supp.2d 629, 633 (D.N.J. 2004), but must rise to "a very high threshold of business activity.'" *Id.* at 633 (quoting *Compagnie des Bauxites de Guinea v. Ins. Co. of N. Am.*, 651 F.2d 877, 891 (3d Cir. 1981)). The facts required to establish sufficient contacts for general jurisdiction must be extensive and persuasive. *Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas*, 675 F.2d 587, 589 (3d Cir. 1982). In other words, the plaintiff must demonstrate "significantly more than minimum contacts." *Provident Nat'l Bank*, 819 F.2d at 437.

In contrast to general jurisdiction, specific jurisdiction rests on the defendant's forum-related activities that give rise to the plaintiff's claims. *See Helicopteros*, 466 U.S. at 413–14. Specific jurisdiction requires a three-part inquiry: (1) whether the defendant purposefully directed its activities at the forum; (2) whether the litigation arises out of or relates to at least one of the contacts; and (3) whether the exercise of jurisdiction otherwise comports with traditional notions of fair play and substantial justice. *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007).

When an intentional tort is alleged, a slight variation on the *O'Connor* three-part test, known as the *Calder* effects test, may apply. *O'Connor*, 496 F.3d at 317 n.2 (citing *Calder v. Jones*, 465 U.S. 783 (1984)). In *IMO Industries*, The Third Circuit held that the *Calder* effects test requires a plaintiff to show that:

> (1) The defendant committed an intentional tort; (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a

result of that tort; (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity[.]

155 F.3d at 265–66 (footnote omitted). The *Calder* effects test, as interpreted by the Third Circuit, requires that a defendant's "conduct and connection with the forum State [must be] such that [defendant] should reasonably anticipate being haled into court there." *Marten*, 499 F.3d at 297 (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). In addition, the Supreme Court has clarified that the minimum contacts analysis, even under *Calder*, must relate to the "defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there" and that "the plaintiff cannot be the only link between the defendant and the forum." *Walden v. Fiore*, 571 U.S. 277, 285–86 (2014). In short, "[a] forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Id.* at 286.

## III.  DISCUSSION

### A. Personal Jurisdiction

The issue arises because the plaintiff, employed by an out-of-state employer, carried out his duties from home, an arrangement increasingly familiar since the COVID-19 pandemic. Tripp does not assert general personal jurisdiction. (Pl. Br. p. 9.) Thus, I will focus on whether the Court may exercise specific personal jurisdiction over these defendants. I separately assess Ascentage's and Yang's contacts with New Jersey, *see Calder*, 465 U.S. at 790, and conclude that Tripp has failed to make a sufficient showing of specific personal jurisdiction as to either defendant.

### 1. Ascentage

As noted above, this Court may exercise specific personal jurisdiction over Ascentage only if (1) the defendant purposefully availed itself of the forum, (2) the claims arise out of or relate to at least one of the defendant's in-state activities, and (3) exercising personal jurisdiction comports with fair play and

substantial justice.[3] *O'Connor*, 496 F.3d at 317. Tripp has failed to allege sufficiently that all three factors support the exercise of personal jurisdiction over Ascentage.

An employee who works remotely from a home office, like Tripp, does not automatically subject his employer to the jurisdiction of his home state. *See Neff v. PKS Holdings, LLC*, No. 18-cv-1826, 2019 WL 3729568, at *5 (E.D. Pa. Aug. 8, 2019). Courts in this Circuit that have analyzed this home-office issue require more: specifically, some affirmative action by the employer targeting the forum state. As examples, I discuss one case finding personal jurisdiction, and another finding it to be lacking.

A District of New Jersey case brought by a remote employee, *Chadwick v. St. James Smokehouse, Inc*, No. 14-cv-2708, 2015 WL 1399121 (D.N.J. Mar. 26, 2015), serves as an example of a showing found sufficient to establish personal jurisdiction. In *Chadwick*, a New Jersey resident worked from her home as the principal buyer of salmon filets for a smoked salmon manufacturer operating in Florida and Scotland. 2015 WL 1399121 at *1. The employee alleged that she was terminated after raising concerns to her employer regarding practices that she believed violated federal law and FDA regulations related to the importation of fresh seafood. *Id.* at *2. Specifically, the employer allegedly misrepresented the origin and quality of its salmon filet products on labels and in advertisements. *Id.* at *1. The employee filed her lawsuit in New Jersey district court against her employer and the owner of the company, and these defendants moved to dismiss the complaint for lack of personal jurisdiction. *Id.* at *2.

The *Chadwick* Court found that the defendants had "many contacts with New Jersey demonstrating that they have purposefully availed themselves of

---

[3]     Tripp also invokes the *Calder* effects test. (Pl. Br. pp. 22–26, 29.) Characterizing the specific jurisdiction analysis in that manner would not change the result. As discussed below, even if the *Calder* test were to apply, the Court finds that Ascentage did not expressly aim its alleged tortious conduct at New Jersey such that New Jersey could be considered the focal point of that alleged tortious activity.

the privileges of doing business there." *Id.* at *4. The company had worked with several New Jersey businesses and the owner had once appeared in a small claims proceeding in New Jersey on behalf of the company in order to resolve an unpaid debt with a New Jersey customer. *Id.* Most critically, the company purposefully availed itself of the New Jersey forum when it hired the employee to be its principal buyer and continuously relied on her to perform essential functions of the business from a remote office located in New Jersey. *Id.* That, the court concluded, created a substantial nexus with New Jersey by "placing a *key piece* of their business in New Jersey and engaging in continuous phone and e-mail exchanges with her for the purposes of conducting that business." *Id.* at *5 (emphasis added). Thus the court found that personal jurisdiction existed.[4]

In contrast, *Magill v. Elysian Global Corp.*, No. 12-cv-6742, 2021 WL 1221064 (D.N.J. Apr. 1, 2021), found that the remote employee had not made a showing sufficient to support personal jurisdiction in New Jersey. Magill, a New

---

[4]    Similar to *Chadwick* is an Eastern District of Pennsylvania case, *Neff v. PKS Holdings, LLC*, No. 18-cv-1826, 2019 WL 3729568 (E.D. Pa. Aug. 8, 2019). There, a Pennsylvania resident worked from her home as a compliance officer for a financial services firm headquartered in New York. 2019 WL 3729568 at *1, *6. The employee alleged that she was terminated after raising concerns regarding a particular product offering. *Id.* at *1–*2. The employee filed suit in the U.S. District Court for the Eastern District of Pennsylvania against her employer, several other entities, and a number of supervisory individuals. *Id.* at *1. The defendants moved to dismiss the complaint for lack of personal jurisdiction. *Id.*

The *Neff* Court concluded that the employee had established specific jurisdiction over the employer. *Id.* at *4. The court noted that the employee was hired to work in Pennsylvania and had regularly performed audits at the employer's business locations in Pennsylvania. Thus, the court found that the employee was hired to work in Pennsylvania as part of the employer's activities directed towards the state. *Id.* at *5. *Neff* distinguished its case from others in which the employees' locations were not relevant to their work-related tasks. *Id.* (citing *Randall v. Davin*, No. 13-cv-703, 2013 WL 6191344 (W.D. Pa. Nov. 26, 2013) & *Connell v. CIMC Intermodal Equip.*, No. 16-cv-714, 2016 WL 7034407 (M.D. Pa. Dec. 2, 2016) and recognizing that, in those cases, "the employees performed no work-related tasks for which their location was relevant").

Jersey resident, performed business development from his home for his employer, a business incorporated and located in Belize. The employee's job duties included speaking with potential investors, working on partnerships, and managing the employer's social media. *Id.* at *2. After his employer failed to pay him for his work, the employee filed suit in New Jersey district court against his employer and other individuals for violating the FLSA. *Id.* The defendants moved to dismiss for lack of personal jurisdiction. *Id.* at *1.

The *Magill* Court concluded that it did not have personal jurisdiction over the foreign employer. The employee, said the Court, failed to allege or submit evidence to show that the employer had any contact with New Jersey other than its exercise of control over the employee's day-to-day operations in the State. Specifically contrasting *Chadwick*, *Magill* stated that the employee's physical location in New Jersey was the only factor connecting the *dispute* to New Jersey. *Id.* at *7. The *Magill* employee's claims against his employer, the Court observed, "would be identical if he lived anywhere else in the world." *Id.* The court saw no indication that the employer availed itself of the privileges of conducting business in New Jersey and stated that New Jersey had very little interest in the case. Thus, the court ruled that it lacked personal jurisdiction over the employer. *Id.* at *8.

In this case, Tripp alleges actions that relate to his presence in New Jersey, but not specifically to Ascentage's contacts with New Jersey. Although Tripp worked remotely from his home in New Jersey, paid New Jersey taxes, collected New Jersey unemployment and disability benefits, received office equipment from Ascentage, and stored business-related documents in his home, those actions were not particular to New Jersey and could have occurred in any state where Tripp chose to work. *See Crosson v. TMF Health Quality Inst.*, No. 20-cv-18800, 2023 WL 2609048, at *5 (D.N.J. Mar. 23, 2023) (concluding that defendants did not avail themselves of the privileges of conducting business in New Jersey where plaintiff performed daily work activities in New Jersey consisting of phone calls, letters, and emails, and the

defendants provided the plaintiff with a company-issued laptop and access to software).

Tripp comes closer to alleging the necessary contacts when he asserts that Ascentage "utilized [Tripp's] physical location in New Jersey so that [he] could contact potential investors located in the area, particularly New York City, which is approximately 20 minutes from [his] home." (Tripp Decl. ¶ 6.) Accepting that as true, as I must, I must also be mindful of what Tripp does not say. Tripp claims that he *could* contact investors in the area, but does not state factually that he did so. He does not cite any meeting with New York investors, whether in New Jersey or New York, that was expedited, for Ascentage's benefit, by Tripp's residency in New Jersey. This vague and somewhat conclusory allegation would not support a finding that Ascentage availed itself of Tripp's location in New Jersey for business purposes. *See Patterson*, 893 F.2d at 604 ("Once the motion is made, Plaintiff must respond with actual proofs, not mere allegations.").

Tripp points out that at least 14 other employees work for Ascentage remotely in New Jersey. (He does not, however, claim that these facts give rise to general jurisdiction.) The mere existence of remote employees, without further information about their work functions, does not indicate that Ascentage purposefully targeted New Jersey. Ascentage does not own any property in New Jersey and has never sponsored a clinical trial in the State. (Cheng Decl. ¶ 8.) Although Ascentage at one time offered some type of office space for employees in New Jersey, Ascentage closed that office in or around March 2021, long before Tripp fell ill and over a year before Ascentage terminated Tripp's employment. (Tripp Decl. ¶ 7.) After considering all of Tripp's allegations and accepting them as true, I conclude that Ascentage has not purposefully availed itself of the New Jersey forum under *O'Connor* (or expressly aimed its alleged tortious conduct at the New Jersey forum under *Calder*). Therefore, the Court cannot exercise specific personal jurisdiction over Ascentage.

### 2. Dajun Yang

I reach the same conclusion as to defendant Dajun Yang. Yang primarily resides in China and has his principal United States residence in Maryland. (Yang Decl. ¶¶ 3–4; Def. Br. p. 2.) Yang has never resided in, held a driver's license from, owned property in, or otherwise lived in New Jersey. (Yang Decl. ¶ 5.) Tripp states that "Yang supervised [his] work [and] also made decisions regarding [his] compensation and annual bonus." (Tripp Decl. ¶ 15.) For the same reasons discussed with respect to Ascentage, any link between Yang and New Jersey is due to *Tripp*'s presence in the forum and does not show that *Yang* purposefully availed himself of the forum under *O'Connor* or that he expressly aimed his alleged tortious conduct at New Jersey under *Calder*. Tripp also states that Yang was the ultimate decision maker with respect to his termination. (Tripp Decl. ¶ 13.) However, Yang did not participate in the video conference during which Tripp's employment was terminated. (*Id.*); *see also Walden v. Fiore*, 571 U.S. 277, 284 (2014) ("[T]hat relationship must arise out of contacts that the defendant *himself* creates with the forum[.]"). In fact, the only direct contact Tripp claims to have had with Yang occurred during a conference in Chicago, Illinois, at or about the time he was hired in 2019. (*See generally* Tripp Decl. & Compl.) Although Tripp states that the individuals who terminated him knew that he was located in New Jersey at the time, Tripp does not claim that Yang was even aware of his location when he was terminated. (*See* Tripp Decl. ¶ 13); *see also Walburn v. Rovema Packaging Machs., L.P.*, 07-cv-3692, 2008 WL 852443, *7 (D.N.J. Mar. 28, 2008) ("*Calder* requires deliberate targeting of the forum. . . . A court cannot automatically infer that a defendant expressly aimed its tortious conduct at the forum from the fact that the defendant knew that the plaintiff resided in the forum.'"). The allegations concerning Yang's contacts with New Jersey fail to support a finding that he has purposefully availed himself of the New Jersey forum under *O'Connor* or expressly aimed his alleged tortious conduct at the New Jersey forum under

12

*Calder*. Therefore, the Court cannot exercise specific personal jurisdiction over Yang.

**B. Transfer of Venue**

I now must decide whether to dismiss the case without prejudice or to transfer venue to a district which can assert jurisdiction over the defendants. A Court that finds it lacks personal jurisdiction "shall, if it is in the interest of justice, transfer such action . . . to any other such court . . . in which the action . . . could have been brought." 28 U.S.C. § 1631; *D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 109–10 (3d Cir. 2009). The transferee court must have subject matter jurisdiction, venue, and personal jurisdiction. *Am. Fin. Res., Inc. v. Smouse*, No. 17-cv-12019, 2018 WL 6839570, *5 (D.N.J. Dec. 31, 2018). A district court which "lacks personal jurisdiction must at least consider a transfer." *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 132 (3d Cir. 2020).

Determining where the interest of justice lies is left to my discretion. *Phillips v. Seiter*, 173 F.3d 609, 610 (7th Cir. 1999); *Roberts v. United States*, 710 F. App'x 512, 514 (3d Cir. 2017) (per curiam). When jurisdiction is clearly available in another court, however, "[n]ormally transfer will be in the interest of justice because [] dismissal of an action that could be brought elsewhere is 'time-consuming and justice-defeating.'" *SM Fin. Servs. Corp. v. Blue Cross Blue Shield of Tex.*, No. 19-cv-17497, 2020 WL 7869213, *2 (D.N.J. July 16, 2020). Indeed, transfer often has the advantage over dismissal because it provides the benefit of maintaining continuity and avoiding litigation over whether the refiled action is time-barred. *Kim v. Korean Air Lines Co.*, 513 F. Supp. 3d 462, 476–77 (D.N.J. 2021).

Here, Ascentage and Yang contend that the Maryland district court is the appropriate forum. (Def. Br. pp. 9–15.) Tripp asserts that the case should not be transferred and should remain in New Jersey. (Pl. Br. pp. 30–36.) Maryland is the state of Ascentage's principal place of business and is also the state of Yang's primary United States residence. The District of Maryland's subject

matter jurisdiction is the same as this Court's, and defendants do not dispute that personal jurisdiction would appropriately be asserted there. Venue would be appropriate under 28 U.S.C. § 1391(b). That district is one, perhaps the only one, in which the action "could have been brought." 28 U.S.C. § 1631. I will therefore exercise my discretion, in the interest of justice, to transfer this case to the District of Maryland.

## IV.    CONCLUSION

For the reasons set forth above, Ascentage and Yang's motion is **GRANTED**. Pursuant to 28 U.S.C. § 1631, this case is transferred to the District of Maryland. An appropriate order follows.

Dated: August 23, 2023

/s/ Kevin McNulty

_____
**Hon. Kevin McNulty**
**United States District Judge**